Rogers, J.
This is an action by the city of Columbus, brought by the city solicitor thereof on request of a tax-payer, to enjoin the board of public service of said city and the Allis-Chalmers Company from proceeding further under an alleged contract awarded the latter by the former for machinery to be installed as part of the city’s electric light plant. The ground for said action is that the contract as awarded to the company is in contravention of law.
It appears from the petition that prior to June 4, 1907, said board advertised for bids to be opened on that day for a high pressure condensing steam turbine, the machinery so to be furnished to be in accordance, with certain specifications, a copy of *463 which is attached to the petition; that said specifications (Section 45) provided that the “turbine shall be of the multiple expansion type and shall have been in successful commercial operation for at least two years, and built and adapted for driving a direct connected generator of a rated capacity of one thousand K. W. under normal load conditions”; that in response to the advertisement the Allis-Chalmers Company made its bid to furnish the machinery, and on June 19, 1907, said board by resolution awarded to the Allis-Chalmers Company the contract therefor; that said award is illegal in this: (1) That the turbine proposed to be furnished and installed by the Allis-Chalmers Company is different from any turbine heretofore manufactured by any other company, and has not been in successful commercial operation for two years, as required by the specifications (Section 45) ; (2) That the Allis-Chalmers Company did not state in its bid the amount of B. IT. P. of its machine when operating at certain designated loads, as required by Section 47 of said specifications; nor (3) give the price of renewal parts for portions of said machine; and that said board and the Allis-Chalmers Company will each carry out its part of said contract unless enjoined, etc. The prayer is for injunction and reference of the matter to said board for further proceedings, and for general relief.
The answer of the Allis-Chalmers Company admits the advertisement for bids, the specifications, the bidding by it for the machinery, the awarding of the contract to it by the board, its intention to carry out the contract, and its failure to state the price of certain renewal parts named, as alleged in the petition; and it denies the other allegations of the petition, and states as a reason for not stating the price of designated renewal parts that water packing was used which was of little or no commercial value.
The evidence shows that there are many types of multiple expansion turbines, the principal of which are the Parsons, Curtis, Ratean, Zolly, Hamilton & Holsworth (a modification of the Zolly), and Williams & Robinson. The Parsons type of turbine has been manufactured and in successful commercial operation for at least ten or fifteen years, and is being manufactured in *464 England by Parsons or his company at the present day. But two factories, however, in the United States, áre manufacturing turbines of the Parsons type, namely, the Westinghouse Company and the Allis-Chalmers Company. The machine which the Allis-Chalmers Company proposes to furnish the city is a multiple expansion turbine of the Parsons type, and made by the Allis-Chalmers Company, hone of whose machines have been in operation for two years, the first having been installed in March, 1906. The turbine as a whole is a complicated piece of machinery and involves many devices and various equipments. The turbine of the Parsons type manufactured by the Allis-Chalmers Company differs in five principal particulars from the machine of the same type manufactured by the Westinghouse Company, namely: (1) the blading system; (2) the balancing pistons; (3) the regulation of the steam; (4) the pressure under which the packing glands operate; and (5) the bed-plates.
The main difference in the blading system consists in the manner of holding fast the blades in the casing and spindle, or stator and rotor, respectively, and of fastening together or lashing the outer ends of the blades. The blades themselves are practically alike in form and operate in the same way. The Allis-Chalmers system of blading is sometimes denominated the Fullager type of blade.
As to the balancing pistons in the Allis-Chalmers machine, in the larger sizes a high pressure and an intermediate dummy or balancing piston are placed at the inlet end of the machine, and the low pressure balancing piston is placed at the exhaust end of the machine; whereas in the Westinghouse machine the three dummies are all placed together at the inlet end.
Regarding the difference in the system of regulation, in the Westinghouse machine steam is admitted in intermittent puffs of the same frequency, but varying in intensity and duration of time; whereas, in the Allis-Chalmers machine there is a continuous flow of steam into the turbine and that flow varies in amount and volume depending upon the load, and is regulated by a governor operating a balanced throttle valve.
Regarding the pressure under which the packing glands *465 operate, the Allis-Chalmers changes from condensing to non-condensing operation, as claimed by witness Van Blarcon.
As to the bed-plates the Westinghouse Company has one continuous bed-plate and the Allis-Chalmers Company has two separate bed-plates Or bases on • which the machine proper rests. The bed-plate in the former extends under the combined unit of the steam and the electrical ends; whereas in the latter there is a separate bed-plate under either end.
Regarding the essential points of similarity between the two machines, there are more than a dozen of such shown (transcript pp. 120, 125) and in those particulars wherein the two machines differ the operating- conditions are practically the same; as, for example, in the steam regulation and the positions of the balancing pistons, while the former differs somewhat structurally, and the latter in position, the operative effect is practically the same. And the same is true of the bed-plates.
The conclusions reached by the court as drawn from the evidence, are, in substance, these: that there are many types of turbines; that, among them is the Parsons turbine, which has been in successful commercial operation for more than two years and is now manufactured by Parsons himself, or under his direction, in England; that the Westinghouse Company and the Allis-Chalmers Company are the only manufacturers of the Parsons type in the United States; that the Westinghouse Company’s machines have been in successful commercial operation for more than two years, but the Allis-Chalmers Company’s machines have not been so in operation; that, with regard to the similarities and differences in the two machines, each company is making a Parsons type of turbine, with, such modifications as in the judgment of each manufacturer add to the efficiency of the respective machines; or, in other words, the Parsons type is the model or plan, after which each machine manufactured by the Westinghouse Company and the Allis-Chalmers Company respectively is constructed, with such additional devices or such changes in the mechanism as are intended to better the original model; and that these changes, with -a view to the betterment of the machines, have been and are being made by the respective *466 companies from time to time witbin two years last past and practically down to date.
- It further appears that it was not within the contemplation of the city or the bidders, that in order to come within the specifications no changes whatever should have been made within the two years period' in the turbine to be furnished; but rather that changes were intended to be made from time to time within the two years period, in order to render the machine more efficient, and only that the essential features of the machine should have stood the two years test. Nor was it within the contemplation of the city in inviting bids under these specifications, that all manufacturers who had not as yet been making turbines for two years, or had not as yet had them in operation for two years, were to be excluded; but rather that turbines of the same kind as those for which bids were invited should have been in successful operation for at least two years.
This brings us to the question as to whether, on the evidence, the Allis-Chalmers machine is a turbine of the same kind as these which have been in successful operation for at least two years. The machine is not in detail the same; but this is not what was contemplated by the specifications. It is evidently of the Parsons kind which has átood the required two years test. If so, has the manufacturer so far departed from the Parsons machine as to make it a distinct type f I am not able to say from the evidence that it has. True, there are changes intended as improvements; but the general type of machine is 'of the Parsons plan or model, and this is especially so as to the blading system, which is conceded to be a distinctive characteristic of the Parsons machine. I have therefore concluded that, in addition to Parsons himself, both the AVestinghouse and Allis-Chalmers Companies are making Parsons machines, with such modifications as in the judgment of each tend to the betterment of the respective machines, and the Parsons machine having been in successful commercial operation for at least two years, the board of public service did not violate Section 45 of the specifications in awarding the contract to the Allis-Chalmers Company.
From another view point I am convinced that the case made *467 by the plaintiff is void of equity. The main question in dispute, in the first instance at least, is one of fact, namely, whether or not the turbine which the Allis-Chalmers Company proposes to furnish to the city has been in successful commercial operation for at least two years. Now, the board of public service by awarding the contract necessarily determined this question of fact in favor of the Allis-Chalmers Company; for in the resolution or determination by the board to let the contract to this company was included the determination in favor of the Allis-Chalmers Company of every question of fact involved in the bid, including the time the machine had been in operation. In other words, by accepting the bid of the Allis-Chalmers Company the board say, in effect1, we have determined that the turbine which the Allis-Chalmers Company proposes to furnish is of multiple expansion type and has been in successful commercial operation for at least two years, and determining these facts, with others, in favor of the Allis-Chalmers Company, we have awarded the contract to it. Now the court is asked by the plaintiff to invade the province of the board in its determination of the facts as to the two years operation, and enjoin further proceedings because the board determined this fact in the affirmative, whereas it should have been determined in the negative and the award refused.
Under what circumstances, then, can the court interfere, where a matter of fact is left to the determination of the board? I think the law is that if the board in exercising its judgment on a question of fact has abused the authority it’ possesses, so that it appears that the board was palpably wrong in its determination of the fact, the court may be called upon to prevent injustice to a party injured resulting from such wrong. But if the fact is open to question or dispute, and the board determines such fact either one way or the other, the court will not interfere mrless the board did not exercise a sound judgment resulting in injury to another.
Now, it appears to me that the cáse before us presents the question of law just indicated, where there- was a disputable fact before the board, and it determined that fact one way, and *468 the court is asked to determine the same fact another way. As it appears to us, the fact was one about which honest men might differ as to what was the truth. And the case being in that situation the court ought not to invade the province of the board in the exercise of its judgment, merely because the court perchance may arrive at a different conclusion from that of the board, and thereby deprive the board of an important part of its functions.
Huggins, Huggins & Johnson, for Westinghouse Co.
G. 8. Marshall, for City.
T. J. Keating and J. M. Butler, for Allis-Chalmers Co.
I have also considered the matter of the B. II. P. and of the water packing, and do not think that either claim possesses sufficient merit to entitle the plaintiff to the relief demanded. The former is calculable from other data given, and the latter was comprised of water — an element of insignificant commercial value. Besides, the matters required were for the information of the board rather than matters of contract, and the board could satisfy itself éoncerning these matters otherwise than from the bids.
Let an entry be drawn finding on the issues for the defendant; motion for new trial overruled, judgment for defendant and dismissal of the petition and exceptions by plaintiff.